## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**AARON E. BURRUS**                                                                                           **PLAINTIFF**

**v.**                                           **Civil No. 1:21cv257-HSO-BWR**

**HUGH N. HALPERN,** *Director,*
*Government Publishing Office*                                                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT HUGH N. HALPERN, DIRECTOR, GOVERNMENT PUBLISHING OFFICE'S MOTION [26] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Hugh N. Halpern, Director, Government Publishing Office's Motion [26] for Summary Judgment. The Motion [26] is fully briefed. After due consideration of the Motion [26], the parties' submissions, and relevant legal authority, the Court finds that Defendant Hugh N. Halpern, Director, Government Publishing Office's Motion [26] for Summary Judgment should be granted, and that Plaintiff Aaron E. Burrus's claims should be dismissed with prejudice.

## I. BACKGROUND

A.    Factual background

Plaintiff Aaron E. Burrus ("Plaintiff" or "Burrus") works as a Quality Control Officer for the Government Publishing Office ("GPO") Secure Production Facility at the John C. Stennis Space Center ("Stennis"), in Hancock County, Mississippi. Compl. [1] at 2, 4; Ex. [28-1] at 15. His assigned unit is responsible for producing

1

the United States Passport. Ex. [26-1] at 1. Plaintiff was hired in 2008 and has held the same grade and title since 2010. Compl. [1] at 4; Answer [9] at 5. Until 2018, Plaintiff was the only employee in the quality control department at Stennis. Ex. [26-1] at 2.

Around 2016, the GPO made changes to its quality control operations in order to implement the Next Generation Passport upgrade. Ex. [26-1] at 1. Steve LeBlanc, the Managing Director for Plaintiff's unit, decided that a reorganization was needed to accomplish this goal and decided to expand Plaintiff's unit at Stennis from consisting of Plaintiff alone to having eight employees, with the first additional hire occurring in 2018. *Id.* at 1-2. "As a result, all duties, tasks, and responsibilities had to be divided among more employees," and adjustments were made to the Performance Plans of all employees who reported to Plaintiff's supervisor, David Spiers ("Spiers"). *Id.* at 2. In addition, the quality control standards issued by the GPO starting in 2015 required "greater participation and engagement by senior management," so Spiers, as a member of senior management, "took on a greater role, as per the new standard." Ex. [28-2] at 1.

Plaintiff is seventy-four years old and claims that the GPO has discriminated against him due to his age. Compl. [1] at 7-8; Mem. [29] at 1-2. He asserts that Spiers changed his job duties and responsibilities and reassigned them to younger employees starting in 2018, around the time Plaintiff turned seventy years old. Compl. [1] at 4-6. He further maintains that he has suffered a de facto demotion because he lost auditing responsibilities and decision-making authority, was

2

excluded from meetings and training opportunities, endured negative comments about his retirement plans and age made by Spiers and another employee, and was twice placed on annual leave rather than sick leave by Spiers. Mem. [29] at 4. Plaintiff points to his Performance Plan which, prior to fiscal year 2019, stated that he would "act as program manager," but in subsequent years required only that he "provide education to support organizations." Ex. [28-2] at 1. Plaintiff also asserts that he no longer participates in the Senate Secure Credential Center improvement efforts, *id.* at 5, and must seek approval from Spiers prior to making decisions, Ex. [28-1] at 5. Next, Plaintiff complains that Rachel Trussell ("Trussell"), a younger employee who held the same grade level as Plaintiff despite having less experience, was promoted to be his supervisor. Mem. [29] at 4; Ex. [28-1] at 6. Plaintiff acknowledges that his title has remained unchanged, and that his pay has increased from $110,595 in 2018 to "[a]bout $131,000" presently. Ex. [26-2] at 2, 10, 12; [28-1] at 5.

Plaintiff also alleges that Spiers and other employees at Stennis made disparaging comments about older employees. Compl. [1] at 6. Specifically, he claims that an employee called him "a mean old man" in a staff meeting over three years ago, Ex. [26-2] at 12-13; [28-1] at 1, and that on another occasion, Spiers asked Plaintiff when he planned to retire, Ex. [28-1] at 3. Plaintiff further asserts that Spiers once referred to a contractor as "the old man," though Plaintiff acknowledges that he did not think Spiers meant it as a derogatory term. *Id.* at 2;

3

Ex. [26-2] at 15. Finally, Plaintiff contends that Spiers has not spoken to him since mid-2017. Ex. [26-2] at 4.

B.  Procedural history

Based on the foregoing allegations, on July 28, 2021, Plaintiff filed a Complaint [1] in this Court against Defendant Hugh N. Halpern, Director, Government Publishing Office ("Defendant"), alleging age discrimination and a hostile work environment based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.[1] Compl. [1]. Plaintiff claims that his direct supervisor, David Spiers ("Spiers"), made disparaging comments about older individuals, removed him from his responsibilities, and reassigned those tasks to younger employees. Compl. [1] at 4-6.

Defendant has filed a Motion [26] for Summary Judgment, arguing that Plaintiff has failed to produce sufficient evidence to prove that "(1) he was subjected to an adverse employment action; and (2) the action was taken because of his age," which are essential elements of an ADEA discrimination claim. Mem. [27] at 1. Defendant further maintains that Plaintiff's asserted instances of harassment are legally insufficient to support a hostile work environment claim. *Id.* at 6-8.

---

[1] The Court notes that Plaintiff's Complaint [1] appears to assert his age-based hostile work environment claim under Title VII of the Civil Rights Act of 1964, Compl. [1] at 8, however, age is not a protected category under Title VII, *see* 42 U.S.C. § 2000e-2 (listing "race, color, religion, sex, or national origin" as protected categories). A plaintiff can assert a hostile work environment claim based on age under the ADEA, *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011), and both parties have referred to Plaintiff's hostile work environment claim as an ADEA claim, Mem. [27] at 2; Mem. [29] at 12. The Court therefore construes Plaintiff's age-based hostile work environment claim as one brought under the ADEA.

Plaintiff responds that he suffered an adverse employment action because "he went from leading program efforts, certification oversight, and significant input to numerous processes and projects at Stennis, to being ignored, relegated, denied promotions, and given the same tasks as the newly-hired GS-7 level employees, when Mr. Burrus is a GS-13 with decades of Quality experience." Mem. [29] at 8. Plaintiff argues that Spiers's question about his retirement plans, another employee referring to Plaintiff as "a mean old man," the promotion of Trussell, a younger employee with less experience, and the timing of these actions shortly after Plaintiff turned seventy years old, demonstrate that these actions were taken due to his age. *Id.* at 10-11 (citing Ex. [28-1]). Regarding his hostile work environment claim, Plaintiff contends that "the conditions of his employment were objectively altered in a demeaning, unreasonable manner," based on

> the erosion of his duties as a GS-13 to substantially the same as those of the GS-7s on the team, making it nearly impossible for him to be promoted to a supervisory position; the elevation of a junior colleague with little to no experience in a higher position when Mr. Burrus had more expertise than anyone on the team, pervasive exclusion, relegation, and isolation, *as well as* the comments about Mr. Burrus' age and retirement.

*Id.* at 13 (emphasis in original).

Defendant replies that Plaintiff has only shown a change in his job duties over time, not "a *de facto* demotion," and that any changes were due to his department expanding "over time from being a department of one (*i.e.*, just him) to a department of eight." Reply [30] at 1. Defendant asserts that the promotion of Trussell is irrelevant to Plaintiff's claims because she was promoted after the Complaint [1] was filed, and Plaintiff, "by his own admission, knew about the job

5

opening, but he decided not to apply." *Id.* at 3-4. In addition, Defendant avers that the changes in job responsibilities upon which Plaintiff relies are insufficient to support a hostile work environment claim and that the comments about his age "fail[] to meet the temporal requirements necessary to qualify as competent evidence." *Id.* at 8-9.

## II. DISCUSSION

A.  Summary judgment standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (quoting *Hamilton*, 232 F.3d at 477).

The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d

6

1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). When considering the record, a court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Id.*

B.   Plaintiff's ADEA discrimination claim

1.   Elements of a federal sector ADEA discrimination claim

The ADEA prohibits age-based employment discrimination in the private and public sectors, but its specific protections distinguish between nonfederal and federal government employment. *See* 29 U.S.C. § 623(a) (private and nonfederal sectors), § 633a(a) (federal sector); *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013). Because Plaintiff complains of actions taken during his federal employment with the GPO, the ADEA's federal sector provision governs his claim. 29 U.S.C. § 633a(a); *Leal*, 731 F.3d at 410.  The federal sector provision states, in relevant part: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the Government Publishing Office . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

To establish a prima facie case of discrimination based on age, a plaintiff must prove that he (1) is within the protected class; (2) is qualified for the position; (3) suffered an adverse employment decision; and (4) was "replaced by someone

7

younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)." *Leal*, 731 F.3d at 410-11 (quoting *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003)). A plaintiff must be at least forty years of age to fall within the ADEA's protection. 29 U.S.C. § 633(a); *Leal*, 731 F.3d at 411. No party disputes that Plaintiff was over the age of forty during the relevant time period, or that he was qualified for the position he held. Compl. [1] at 7; Answer [9] at 7; *see generally* Mem. [27]. This satisfies the first and second elements of a prima facie case.

Defendant bases its summary judgment argument on the third and fourth elements, arguing that Plaintiff has not shown that he suffered an adverse employment action or that "age was the 'but for' cause of the alleged act." Mem. [27] at 2, 5. Because the Court finds that Plaintiff has not presented competent summary judgment evidence sufficient to show that he experienced an adverse employment action, it limits its discussion of Plaintiff's ADEA discrimination claim to that element and need not reach the fourth element of Plaintiff's prima facie case.

2.  Whether Plaintiff suffered an adverse employment action

"Adverse employment actions are ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave and compensating." *English v. Perdue*, 777 F. App'x 94, 99 (5th Cir. 2019) (quoting *Stroy v. Gibson*, 896 F.3d 693, 699 (5th Cir. 2018)). "The mere 'loss of some job responsibilities' does not constitute an adverse employment action." *Thompson v. City of Waco*, 764 F.3d 500, 504 (5th

8

Cir. 2014); *see also Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 270 (5th Cir. 2005) (holding that removal of twenty percent of job duties without a reduction in pay was not an ultimate employment decision). However, "a change in or loss of job responsibilities—similar to the transfer and reassignment contexts—may be so significant and material that it rises to the level of an adverse employment action." *Thompson*, 764 F.3d at 504. In *Thompson*, the Fifth Circuit held that an employee suffered an adverse employment action when he suffered the equivalent of a demotion: "he lost the essential job functions of a detective, he no longer use[d] his education and skills that he had acquired and regularly used as a detective, and his new position [was] less interesting, provide[d] fewer opportunities for advancement, [was] less prestigious, and involve[d] significantly diminished responsibilities." *Id.* at 505.

Here, it is undisputed that Plaintiff was not fired or demoted in title, nor has his compensation decreased. Ex. [26-2] at 2. In fact, Plaintiff's salary has increased multiple times since the alleged discrimination began. Ex. [28-1] at 5 (showing Plaintiff made $110,595 in 2018, $119,004 in 2019, and $123,198 in 2020); [26-2] at 12 (stating that Plaintiff now makes $131,000 annually). Instead, Plaintiff's contention is that he suffered an adverse employment action because of a change in job duties. *See* Mem. [29] at 7-8. He asserts that "he went from leading program efforts, certification oversight, and significant input to numerous processes and projects at Stennis, to being ignored, relegated, denied promotions, and given the same tasks as the newly-hired GS-7 level employees." Mem. [29] at 8. As evidence of

9

this change, he points to a loss of auditing responsibilities, changes to his Performance Plan, his exclusion from meetings and training opportunities, a loss of authority, the promotion of Trussell, comments about his retirement plans and age made by Spiers and another employee, and two instances when Spiers allegedly placed him on annual leave rather than sick leave. *Id.*

Plaintiff's central argument is that his Performance Plan prior to 2019 referred to him as a "program manager, which left [him] responsible for everything in quality," Ex. [26-2] at 2, but that his current daily tasks include looking at passports, reviewing and measuring them, and making a spreadsheet with the measurements collected, *id.* at 5. While Plaintiff asserts that he handled "everything in quality" previously, *see* Ex. [26-2] at 2, he offers few concrete examples of the actual tasks he used to perform that he no longer does, and he has not pointed to evidence showing what percentage of his job duties have been lost. Plaintiff's allegations focus on job tasks performed by other employees rather than explaining what specific tasks he used to perform and the extent to which those tasks have now been allegedly removed. *See* Ex. [28-1] at 5-12. Nor does Plaintiff provide more than conclusory statements that he essentially performs a different job, as was the case in *Thompson*. *See* Mem. [29] at 8-9; Ex. [28-1] at 5. Accordingly, Plaintiff has not pointed to sufficient evidence to show that he lost the essential functions of his job as necessary to rise to the level of an adverse employment action. *See Thompson*, 764 F.3d at 505.

For example, Plaintiff generally claims a loss of auditing responsibilities.[2] Compl. [1] at 5. As evidence of his former role in performing these audits he notes that he once gave a presentation to internal auditors in Washington, D.C., and he has not given another such presentation. Compl. [1] at 5; Ex. [26-2] at 6-7. However, Plaintiff acknowledges that his presentation was the only time a presentation to the internal auditors was ever given. Ex. [26-2] at 6-7. A one-off task that is no longer performed can hardly constitute the loss of an essential function of Plaintiff's job. *See Matthews v. Pilgrims Pride*, 783 F. App'x 346, 349 (5th Cir. 2019) (holding that the loss of duties performed for temporary periods of time was not an adverse employment action); *Williams*, 149 F. App'x at 270 (holding that a removal of twenty percent of an employee's job duties was not an ultimate employment decision).

The same deficiency applies to Plaintiff's evidence of changes in his Performance Plan from "act as program manager" to "provide education to support organizations," as well as the removal of his participation in the Senate Secure Credential Center improvement efforts. Ex. [28-2] at 1, 5. Plaintiff does not provide competent evidence explaining what exactly these tasks entailed prior to the changes of which he complains. *See, e.g.*, Ex. [26-2] at 2, 6 (testifying merely that he used to "do[] everything" in quality control without describing what his former tasks

---

[2] Defendant argues that any reduction of Plaintiff's responsibilities was "a necessary consequence of the increase in quality control employees and changes to industry standards governing audit processes." Mem. [27] at 4; Ex. [26-1] at 1. Spiers testified that, with the addition of seven new employees, "all duties, tasks, and responsibilities had to be divided among more employees, and minor adjustments were made to the Performance Plans of all employees" who reported to him. Ex. [26-1] at 1-2.

11

were). Because a mere loss of some job responsibilities does not constitute an adverse employment action, Plaintiff cannot simply point to a change in part of his job description without providing specific evidence demonstrating that it amounted to a functional demotion. *See Thompson*, 764 F.3d at 505; *Williams*, 149 F. App'x at 270. Plaintiff's summary judgment evidence of a change in the wording of his Performance Plan and a reduction of some undescribed tasks is insufficient to show a de facto demotion. *Thompson*, 764 F.3d at 505-06 (holding that the loss of job responsibilities amounted to an adverse employment action when an employee "effectively occup[ies] a new and objectively worse position, with significantly diminished material responsibilities").

Plaintiff next contends that there were meetings for quality control in which he was not included. *See* Ex. [28-1] at 9-11. Plaintiff's evidence does not reflect a complete elimination of his participation in meetings, nor has he revealed the number of meetings he participated in previously to show the extent to which this role has been diminished. *See* Ex. [28-1] at 10 (discussing occasions when Plaintiff was in meetings: "in a meeting today"; "David had me sit in an audit meeting").

Plaintiff also states that he has lost training opportunities, "both to give trainings and participate in them," Mem. [29] at 4, but the Complaint [1] acknowledges that he has performed a training session, Compl. [1] at 4, and Plaintiff has conceded that he was given auditing training by Spiers and Trussell, Ex. [28-1] at 10. Plaintiff complains that Trussell has performed other training sessions instead of him, but he does not indicate the number of those training

12

sessions or the extent to which he previously performed the training sessions. Moreover, "a failure to train does not constitute an ultimate employment decision" without specific evidence demonstrating that the employee's lack of training reduced compensation or promotion opportunities, *see Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016), and Plaintiff has not provided such evidence.

Regarding Plaintiff's alleged loss of authority, he complains of not having the ultimate decision power, but the evidence before the Court suggests that he never had such power. *See* Ex. [28-2] at 7. Spiers testified that he has "always retained the top decision-making authority" and that any decisions by Plaintiff "would have been approved by" Spiers. Ex. [28-2] at 7. Plaintiff has not pointed to any evidence disputing Spiers's testimony in this regard. Plaintiff cannot show he suffered an adverse employment action by relying on the loss of responsibilities he never possessed. *See Matthews*, 783 F. App'x at 349 (holding that an employee did not suffer an adverse employment action when she was limited to the responsibilities of her job even where she temporarily had greater authority); *Thompson*, 746 F.3d at 504 (requiring the loss of significant and material responsibilities that the employee formerly had in order to show an adverse employment action).

To the extent Plaintiff complains that Trussell was offered a promotion instead of him, *see* Mem. [29] at 4, that issue is not properly before the Court because the promotion occurred after Plaintiff's Complaint [1] was filed and Plaintiff has never sought to amend his Complaint [1] to include that action, *see* Ex.

13

[30-1] at 4-6. Even if it were properly before the Court, Plaintiff cannot rely on it as an adverse action because it is undisputed that he did not seek the position.[3] *See* Ex. [30-1] at 5-6; *Bolton v. City of Hattiesburg*, No. 2:17-cv-41-KS-MTP, 2017 WL 4485879, at *2 (S.D. Miss. May 30, 2017) (finding that a plaintiff failed to establish a prima facie ADEA claim when "she *never sought* the position" (emphasis in original)).

Plaintiff also complains of negative comments by Spiers and other employees, such as being called a "mean old man," and claims his pay was altered on two occasions when he was placed on annual leave rather than sick leave. *See* Mem. [29] at 8; Ex. [26-2] at 12; [28-1] at 5. Negative remarks are not "ultimate employment actions," and therefore do not qualify as adverse employment actions. *See English*, 777 F. App'x at 99. Regarding the altered pay, even if two changes of leave designation could count as an adverse employment action, Plaintiff relies on unsubstantiated assertions and has pointed to no evidence supporting these statements. This is insufficient to show an adverse employment action and defeat summary judgment. *Pioneer Expl., L.L.C.*, 767 F.3d at 511.

In sum, Plaintiff has not presented sufficient summary judgment evidence to demonstrate a genuine issue on whether he suffered an adverse employment action. Because Plaintiff cannot establish this essential element of his prima facie case of

---

[3] To the extent that Plaintiff's interrogatory responses claim that he did not apply for the position because it was not posted as a supervisory position in quality control, *see* Ex. [28-1] at 6, 16, Plaintiff has not raised this argument in his briefing on the Motion [26] for Summary Judgment, *see* Mem. [29], and it is therefore waived, *see Gray v. White*, 18 F.4th 463, 469 (5th Cir. 2021) ("[W]hen a party fails to raise an argument in opposition to a motion for summary judgment[,] . . . that argument is waived.").

14

age discrimination, Defendant is entitled to summary judgment on Plaintiff's ADEA discrimination claim.

C.     Plaintiff's ADEA hostile work environment claim

A prima facie case of an age-based hostile work environment requires the plaintiff to establish that "(1) he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011); *English*, 777 F. App'x at 98. Objective offensiveness looks at the totality of the circumstances, considering the frequency of the harassment and its severity. *Dediol*, 665 F.3d at 441-42.

Plaintiff relies on three remarks to support this claim: (1) a coworker calling him a mean old man; (2) Spiers referring to another worker as an old man; and (3) Spiers asking Plaintiff when he planned to retire. Mem. [29] at 13. Plaintiff claims that the comments by Spiers occurred at some time in 2017 or earlier, Ex. [26-2] at 14-15; [28-1] at 2-3, and he was unable to provide any date as to when he was called "a mean old man" by a coworker besides noting that it happened before February 2020, Ex. [26-2] at 12-13; [28-1] at 1-2. Three remarks over three or more years are insufficient to show a hostile work environment. *Cf. Dediol*, 655 F.3d at 442 (finding a hostile work environment where the plaintiff "endured a pattern of name-calling of a half-dozen times daily" and had a coworker charge at him and threaten to

15

attack him); *Moody v. U.S. Sec'y of Army*, 72 F. App'x 235, 238-39 (5th Cir. 2003) (finding that the plaintiff had failed to show a hostile work environment when she cited only four derogatory comments, such as "Granny, when are you going to retire and let someone younger have a job?").

Plaintiff argues that these comments should be viewed in connection with the other evidence he has presented regarding his change in job duties. Mem. [29] at 13. The redistribution of some of Plaintiff's job responsibilities to other employees as the department expanded from one employee to eight employees is not conduct that a reasonable person would find to be hostile or abusive. *Dediol*, 655 F.3d 441-42 (requiring objective offensiveness); *see also Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, 731 F. App'x 288, 290, 292-93 (5th Cir. 2018) (holding that an employee's transfer to a different department did not qualify as harassment); *Ferguson v. Takata Seat Belts, Inc.*, No. SA-06-CV-65-XR, 2008 WL 4659372, at *1, 6 (W.D. Tex. Oct. 21, 2008) (finding that exclusion from meetings, reassignment of job duties to other employees, and loss of supervisory role did not establish a hostile work environment). Plaintiff's attempt to connect the comments at issue with his job duties is also unavailing because the ones made by Spiers occurred at least a year prior to any employment action and therefore lack the necessary temporal connection. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (holding that a discriminatory comment made almost a year prior to an employment action was too distant in time to show a connection between the

remark and the act). Plaintiff has not created a genuine issue of material fact as to whether he was subjected to a hostile work environment based on age.

### III. CONCLUSION

To the extent the Court has not directly addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Hugh N. Halpern, Director, Government Publishing Office's Motion [26] for Summary Judgment is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Aaron E. Burrus's claims are **DISMISSED WITH PREJUDICE**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 5th day of December, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE